**Troy G. Sexton**, OSB #115184
tsexton@portlaw.com
Motschenbacher & Blattner, LLP
117 SW Taylor St., Suite 200
Portland, Oregon 97204-3211
Telephone (503) 417-0517
Facsimile (503) 417-0527

Attorney for Defendant Brad Fredericks

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **F. Antone Accuardi**<br><br>Plaintiff,<br><br>v.<br><br>**Brad Fredericks, John & Jane Doe 1-10,**<br><br>Defendants. | Case No.　　　3:13-cv-01825-ST<br><br>MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION) |

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 200
Portland, Oregon  97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 4

II.   FACTUAL BACKGROUND ................................................................................ 4

III.  STATUTORY BASIS FOR MOTION .............................................................. 7

IV.   ARGUMENT ........................................................................................................ 9

  A.  Accuardi's Claims Arise from Protected Conduct .......................................... 9

    1.   Fredericks' Statements Were Made in the Exercise of his Constitutional Right of Free Speech. ................................................................................................................. 9

    2.   Fredericks' Statements Relate to "An Issue of Public Interest" ................................. 10

  B.  Accuardi Must Present Substantial Evidence That He Will Prevail On His Claim ....... 12

    1. The First Amendment Absolutely Protects Fredericks From Liability. .......................... 12

      a.  The Blog is Fredericks' Opinion .................................................................. 13

      b.  Any False Implications Are Not Actionable .................................................. 16

    2. The False Light Claim Fails ........................................................................................ 17

    3. Intentional Infliction of Emotional Distress Also Fails ................................................. 18

    4. Interference with Prospective Economic Advantage Is Not Actionable. ......................... 21

  C.  The Claims Against the Doe Defendants Should be Dismissed. ...................................... 22

  V.  CONCLUSION ........................................................................................................ 23

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 200
Portland, Oregon  97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

# TABLE OF AUTHORITIES

**Cases**

*Babick v. Or Arena Corp.*, 333 Or 401 (2002) .................................................................. 18
*Card v. Pipes*, 398 F. Supp 2d, 1126 (Or. Dist 2004) ....................................................... 9, 18
*ComputerXpress v. Jackson*, 93 Cal.App.4th 993 (Cal. App. 2001) .................................. 10
*Cron v. Zimmer*, 255 Or. App. 114 (2013) ......................................................................... 21
*Dean v. Guard Pub. Co., Inc.*, 73 Or. App. 656 (1985)...................................................... 17
*DuBoff v. Playboy Enterprises Int'l, Inc.*, 2007 WL 1876513 (D. Or. June 26, 2007)................ 18
*Gardner v. Martino*, 2005 WL 3465349 (D. Or. September 19, 2005).................................. 11
*Holland v. Lentz*, 239 Or. 332 (1964) ................................................................................ 17
*House v. Hicks*, 218 Or. App. 348 (2008).......................................................................... 19
*Hustler Magazine, Inc v. Falwell*, 485 U.S. 46 (1988)....................................................... 12
*In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011)...................................... 9
*Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781 (9th Cir. 1980) ....... 15
*Ingels v. Westwood One Broadcasting Services, Inc.*, 28 Cal.Rptr.3d 933 (Cal. App. 2005) ........ 8
*Lewis v. Time, Inc,* 710 F.2d 549 (9th Cir. 1984) ....................................................... 13, 14, 16
*Ludwig v. Superior Court*, 43 Cal.Rptr.2d 350 (Cal. App. 1995)......................................... 9
*Magenis v. Fisher Broad., Inc.*, 103 Or. App. 555 (1990)............................................. 17, 18
*Mann v. Quality Old Time Service, Inc.*, 15 Cal.Rptr.3d 215 (Cal. App. 2004)...................... 8
*McGanty v. Staudenraus*, 321 Or 532 (1995) ............................................................... 19, 21
*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) .......................................................... 12
*NAACP v. Clairborne Hardware*, 458 U.S. 886 (1982) ..................................................... 12
*New York Times v. Sullivan* 376 U.S. 254 (1964).............................................................. 12
*Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or 487 (1999)................................ 22
*Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027 (Cal. App. 2008).............................. 10
*Partington v. Bugliosi*, 56 F.3d 1147 (9th Cir. 1995) ......................................................... 13
*Phantom Touring, Inc. v. Affiliated Publications,* 953 F.2d 724 (1st Cir. 1992)........................ 16
*Redco Corp. v. CBS, Inc.*, 758 F.2d 970 (3d Cir. 1985) ..................................................... 14
*Reno v. Am. Civil Liberties Union,* 521 U.S. 844, 845 (1997) ........................................... 10
*Rivero v. AFSCME*, 105 Cal. App. 4 913 (Cal. App. 2003) ............................................... 11
*Seelig v. Infinity Broadcasting Corp.*, 119 Cal.Rptr.2d 108 (Cal. App. 2002)...................... 8, 11
*Sipple v. Foundation for National Progress*, 71 Cal. App. 4th 226 (Cal. App .1999) ................ 11
*Snyder v. Phelps,* 131 S. Ct. 1207 (2011)........................................................................ 12
*Tague v. Citizens for Law and Order, Inc.*, 75 Cal. App. 3d Supp. 16 (Cal. App. 1977)............ 11
*Thompson v. Tel. Data Sys., Inc.*, 130 Or App 302 (1994).................................................. 22
*Time Inc. v. Hill* 385 U.S. 374 (1967) ......................................................................... 12, 17
*Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097 (9th Cir. 2003) ....................................... 8, 23
*Wilbanks v. Wolk*, 121 Cal. App. 4th 883 (Cal. App. 2004) ............................................... 10

**Statutes**

47 USC § 227 ....................................................................................................................... 10
ORS § 31.150 .............................................................................................................. 9, 10, 12, 18

**Other Authorities**

Restatement (2d) of Torts § 566 cmt. c (1965) ............................................................... 13, 17

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 200
Portland, Oregon  97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

## I.   INTRODUCTION

Defendant Brad Fredericks submits this Memorandum in Support of Special Motion to Strike, filed pursuant to Oregon's anti-SLAPP statute, ORS § 31.150 to 31.155.  Fredericks has moved to strike Plaintiff F. Antone Accuardi's claims against him on the grounds that those claims are based solely on statements made by Fredericks in the furtherance of his constitutional right of free speech in connection with an issue of public interest.

## II.   FACTUAL BACKGROUND

Fredericks operates The Telecom Compliance News Press, a website publically available to the world at http://telemarketerspam.wordpress.com/ (the "Blog").  Fredericks Dec. ¶ 2.  The Blog exists as a forum for disseminating information to the world at large about Fredericks' investigation into annoying, and substantially illegal, automatically generated telemarketing calls ("robo-calls").[1] The American public is impacted by these robo-calls in large numbers and the use of robo-calls is severely restricted under federal law.[2]

The Blog was born out of Fredericks' own frustrations at receiving a large number of robo-calls from telemarketers with which he had no pre-existing business relationship, and despite his phone number being listed on the national Do-Not-Call registry. *Id.* at ¶ 3.  He believed that the calls he was receiving were made in violation of federal law, and he endeavored to determine who the people were behind these calls, how they made their money and how they were able to continue to operate despite being based on an illegal activity.  *Id.*  The Blog

---

[1] *See* Federal Trade Commission Press Release "FTC Offers Consumers Tips on How to Respond to Unwanted Robocalls"(July 10, 2012) available at http://www.ftc.gov/opa/2012/07/robocall.shtml ("Nearly all telemarketing robocalls have been illegal since September 1, 2009. The only *legal* sales robocalls are ones that consumers have stated in writing that they want to receive.")

[2] *See Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Servs., Ltd.*, 975 F. Supp. 329 (S.D.N.Y. 1997) ("Telephone Consumer Protection Act (TCPA) was enacted to protect privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile ( [f]ax) machines and automatic dialers."

PAGE 4 - MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)

constitutes the results of Fredericks' research and investigation and has been praised by members of Congress. Fredericks Dec. ¶¶ 4, 5, Ex. 2.  Fredericks has also been granted "media" status by the FTC for the purpose of making Freedom of Information Act requests to that agency. Fredericks Dec. ¶ 6, Ex. 3.

Fredericks' research of phone call databases, court documents and other public records revealed that a significant volume of telemarketing activity was centered around three individuals, Accuardi, Steve Hamilton, and Plaintiff's father, Fred Accuardi (references to the elder Accuardi, and not Plaintiff, will address him as "Fred Accuardi").  The following conclusions were reached based on that investigation, and reported on the Blog:

- Pacific Telecom Communications Group ("Pacific Telecom") is a Nevada company with Fred Accuardi listed as a corporate director.  Fred Accuardi is also the president of Telephone Management Corporation ("Telephone Management").  Sexton Dec. ¶ 2, Ex 1, Sexton Dec. ¶5, Ex 4.
- Accuardi and Steve Hamilton "operated" Pacific Telecom.  *See In the Matter of Pacific Telecommunications Group, North Dakota Office of the Attorney General*, PU-12-750, Affidavit of Tanya J. Hetzler.  Sexton Dec. Ex 2.
- Pacific Telecom's phone numbers were used by telemarketers and reported to the FTC for violations of the Federal Do-Not Call law in enormous numbers.  Fredericks Dec. ¶ 7.
- Telemarketing calls, many of which were attributable to Pacific Telecom, were the number one consumer complaint to the Oregon Department of Justice in 2012.  *See* Press Release, Oregon Department of Justice, Oregon Department of Justice Releases Annual Top 10 consumer complaints (March 6, 2013) available at http://www.doj.state.or.us/releases/Pages/2013/rel030613.aspx.

PAGE 5 - MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)

- Accuardi corresponds with the Oregon Department of Justice and others as Pacific Telecom's "General Legal Counsel."  Fredericks Dec ¶12, Ex. 5.

- Accuardi's LinkedIn profile notes that he is the "General Legal Counsel" for Telephone Management.  Sexton Dec. Ex. 3.

- In response to a subpoena from the Tennessee Regulatory Authority asking for the names of its clients, Pacific Telecom listed two clients, one of which was International Telephone.  The other client listed has since been sued by the FTC for its telemarketing activities.  Fredericks Dec ¶¶ 8, 10. Ex 4

- International Telephone was set up by Stephen Thompson, Accuardi's former law partner in his Belizean law firm specializing in offshore incorporation and administration, and "asset protection and taxation" services.  Sexton Dec. ¶¶ 6, 7; Ex. 5, 6.

- Form contracts between International Telephone and its clients list Accuardi as "VP and General Counsel" of the Company.  Fredericks Dec. ¶15 Ex. 7.

- Accuardi uses the same email address for International Telephone business and official court business.  *Id; See* Complaint, Header (listing interlaw@justice.com as the email address for Plaintiff).

- International Telephone's website is hosted by the same hosting company as Telephone Management, suggesting that both sites are controlled by the same people.  Fredericks Dec ¶ 16.

- Fred Accuardi has controlled an email address at International Telephone's domain name. Fredericks Dec. ¶ 14.

- Accuardi's office phone number appears to come from Telephone Management, and his office address is the same as Telephone Management.  Sexton Dec. ¶ 8; Fredericks Dec ¶ 12.

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 200
Portland, Oregon  97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

- Accuardi has represented Telephone Management in federal litigation in the past. *See e.g. Telephone Management Corporation v. J. Jill Group,* 3:01-cv-00369-HU (Oregon District Court); *SBC Global Services, Inc v. AFT Technologies, Ltd et al* 3:09-cv-00427-MO(Oregon District Court).

On the Blog, Fredericks opines that Accuardi is an attorney, employee or agent of Pacific Telecom, Telephone Management and International Telephone, three companies that facilitate telemarketing in violation of federal law. Those opinions are based on the interconnective relationship between the owners, public records available on the internet and pursuant to Freedom of Information Act requests, internal documents of Accuardi's employer and correspondence with Accuardi.

In his Complaint, Accuardi provides a "Summary Portrayal of Plaintiff" in which he describes how he feels that he has been portrayed on the Blog. The Summary Portrayal does not cite the actual language of the Blog, but instead rests on what Accuardi believes to be the implication of Fredericks' opinions and the facts revealed on the Blog. It is this Summary Portrayal that Accuardi claims is false, and subjects Fredericks to liability under each of Accuardi's three claims for relief. But the Summary Portrayal does not represent the words of Fredericks, and since he did not make the assertions in the Summary Portrayal, he cannot be held liable for its representations.

### III.   STATUTORY BASIS FOR MOTION

ORS 31.150 provides, in part, as follows:

(1)      A defendant may make a special motion to strike against a claim in a civil action described in subsection (2) of this section. The court shall grant the motion unless the plaintiff establishes in the manner provided by subsection (3) of this section that there is a probability that the plaintiff will prevail on the claim. The special motion to strike shall be treated as a motion to dismiss under ORCP 21 A but shall not be subject to ORCP 21 F. Upon granting the special motion to strike, the court shall enter a judgment of dismissal without prejudice.

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 200
Portland, Oregon  97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

(2)     A special motion to strike may be made under this section against any claim in a civil action that arises out of: …

(c) Any oral statement made, or written statement or other document presented, in a place open to the public or in a public forum in connection with an issue of public interest; or

(d) Any other conduct in furtherance of the exercise of … the constitutional right of free speech in connection with a public issue or an issue of public interest.

(3)     A defendant making a special motion to strike under the provisions of this section has the initial burden of making a prima facie showing that the claim against which the motion is made arises out of a statement, document or conduct described in subsection (2) of this section. If the defendant meets this burden, the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case. If the plaintiff meets this burden, the court shall deny the motion.

(4)     In making a determination under subsection (1) of this section, the court shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

This statute was adopted by the legislature in 2001. Or. Laws 2001, ch. 616. California adopted its anti-SLAPP statute in 1992 and Oregon's statute was "closely modeled on the California statute. (Testimony of Dave Heynderickx, Legislative Counsel, to House Committee on Judiciary, Subcommittee on Civil Law, March 19, 2001 E)

California's anti-SLAPP statute was enacted to allow early dismissal of meritless First Amendment cases aimed at chilling expression through costly, time-consuming litigation. *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1109 (9th Cir. 2003).  However, "[t]he moving defendant has no obligation to demonstrate that the plaintiff's subjective intent was to chill the exercise of constitutional speech or partition rights, or that the action had the effect of chilling such rights." *Mann v. Quality Old Time Service, Inc.*, 15 Cal.Rptr.3d 215, 220 (Cal. App. 2004). The statute can be invoked against *any kind of claim* that is based on protected speech. "The nature of the cause of action alleged is not dispositive." *Ingels v. Westwood One Broadcasting Services, Inc.*, 28 Cal.Rptr.3d 933, 940 (Cal. App. 2005) (applying statute to age discrimination claim).  See also *Seelig v. Infinity Broadcasting Corp.*, 119 Cal.Rptr.2d 108 (Cal. App. 2002) (applying statute to claims for intentional infliction of emotional distress, slander, and invasion

PAGE 8 - MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)

of privacy); *Ludwig v. Superior Court*, 43 Cal.Rptr.2d 350 (Cal. App. 1995) (applying statute to claims for interference with contractual relations, interference with prospective economic advantage, and unfair competition).  Defendants in Federal Court may avail themselves of the anti-SLAPP statute provisions.  *Card v. Pipes*, 398 F. Supp 2d, 1126 (Or. Dist 2004)

## IV.    ARGUMENT

Accuardi's claims must be stricken, and reasonable attorney fees awarded to Fredericks. Accuardi is suing Fredericks for his constitutionally protected speech on a public issue.  The burden now shifts to Accuardi to prove a probability of success on his case using substantial evidence.  He cannot do so.

### A.    Accuardi's Claims Arise from Protected Conduct.

Under ORS § 31.150(3), a court must first decide whether a claim "arises out of a statement, document or conduct described in subsection (2) of this section." In this case, Accuardi's complaint is based on statements made "in furtherance of the exercise of the constitutional right of … free speech in connection with a public issue or an issue of public interest" within the meaning of ORS § 31.150(2)(d), and, alternatively, in a public forum within the meaning of ORS § 31.150(2)(d).

### 1.    Fredericks' Statements Were Made in the Exercise of his Constitutional Right of Free Speech.

Accuardi's claims against Fredericks are based solely on statements made by Fredericks on his Blog. See Complaint ¶¶ 6, 27, 34 and 41.  Posting facts and opinion on the internet, including those made on a blog, is conduct in furtherance of the exercise of the constitutional right of free speech. *See In re Anonymous Online Speakers,* 661 F.3d 1168, 1173 (9th Cir. 2011) ("although the Internet is the latest platform for anonymous speech, online speech stands on the same footing as other speech.") *See also Reno v. Am. Civil Liberties Union,* 521 U.S. 844, 845

PAGE 9 - MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)

(1997) (there is " no basis for qualifying the level of First Amendment scrutiny that should be applied to the Internet."). Accuardi's claims are based on Fredericks' speech, satisfying the first half of his burden under ORS § 31.150(2).

Alternatively, Fredericks' statements were made in a public forum: Fredericks' blog, accessible free of charge to anyone on the internet. The internet is a public forum. *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 895 (Cal. App. 2004) (statements made on the internet "hardly could be more public. The Internet "provides relatively unlimited, low-cost capacity for communication of all kinds .... This dynamic, multifaceted category of communication includes not only traditional print and news services, but also audio, video, and still images, as well as interactive, real-time dialogue. Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox. Through the use of Web pages, mail exploders, and newsgroups, the same individual can become a pamphleteer." Citing *Reno* at 870; *See also ComputerXpress v. Jackson*, 93 Cal.App.4th 993, 1007 (Cal. App. 2001) (holding that disparaging remarks made on Web sites were made in a public forum when the evidence showed that the Web sites were accessible free of charge to any member of the public and persons who chose to do so could post their own opinions there.)

## 2. Fredericks' Statements Relate to "An Issue of Public Interest"

Telemarketing, robo-calling and its regulation is a topic of public interest. It is an activity regulated by the FTC. *See, generally* 47 USC § 227. Between January 1, 2011 and October 22, 2012 the FTC received nearly 3 million consumer complaints for Do-Not-Call list violations by telemarketers. Fredericks Dec. ¶ 7. Since May 19, 2012, the Blog has received over 350 comments from the public, and tens of thousands of individual page views, evidence of significant public interest in the topic. Fredericks Dec. ¶5.

Public interest, for anti-SLAPP purposes, is anything that the public is interested in. *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (Cal. App. 2008) (""an issue of

PAGE 10 - MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)

public interest" within the meaning of [California's anti-SLAPP statute] is any issue in which the public is interested.")  Precise boundaries of the "public interest" may be difficult to draw, but in each of the cases discussing the issue, the subject statements concerned conduct that could directly affect a large number of people beyond the direct participants, or a topic of widespread, public interest.  *Rivero v. AFSCME,* 105 Cal. App. 4 913, 924 (Cal. App. 2003). Discussion of crimes and violations of the law is in the public interest. *See Tague v. Citizens for Law and Order, Inc*., 75 Cal. App. 3d Supp. 16 (Cal. App. 1977) (explaining that the subject of crimes and criminals plunges deeply into the heart of public issue). Debate may be sparked and encouraged by the discussion of an individual's involvement in an issue of public interest. *Seelig v. Infinity Broadcasting Corp.* 97 Cal. App. 4th 798, 807–08 (Cal. App. 2002); *Gardner v. Martino*, 2005 WL 3465349 (D. Or. September 19, 2005) (explaining comments on talk-radio show about a single consumer's treatment by a mom and pop retailer constituted statements about a public issue); *Card v. Pipes*, 398 F. Supp. 2d at 1137 (D. Or. 2004) (finding that individual's alleged anti-Israel statements were in connection with the public interest); *See also Sipple v. Foundation for National Progress*, 71 Cal. App. 4th 226 (Cal. App .1999) (holding that magazine article publicizing alleged domestic violence by plaintiff was in connection with an issue of public interest because the article addressed domestic violence.)

Fredericks' Blog is devoted to exposing illegal telemarketing phone calls and the mechanisms through which they operate.  The Blog is not concerned with Accuardi in his personal capacity, but in his capacity as a facilitator of illegal telemarketing.  His name is mentioned, and his role discussed, in less than half of the Blog's content.  Fredericks is only interested in stopping illegal telemarketing calls, not in Accuardi personally.

Fredericks' Blog represents speech on an issue of public interest because it discusses a federally regulated and restricted activity, impacting millions of people, and generating millions

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 200
Portland, Oregon  97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

of complaints to the federal government. The public is interested in the Blog and its topics;
therefore, its content is an issue of public interest.

**B.      Accuardi Must Present Substantial Evidence That He Will Prevail On His
        Claim**

After showing that the claims against Fredericks arise out of his constitutionally protected
speech on an issue of public interest, the burden shifts now to Accuardi to present "substantial"
evidence that he will "probably" prevail on his claim.  ORS § 31.150(3).  Accuardi cannot
present the substantial evidence necessary to prevail on any of his claims.  He cannot prevail
because the speech complained of is absolutely protected by the First Amendment, and, even if
not protected, Accuardi cannot prove all of the elements of the claims he has pled.

**1. The First Amendment Absolutely Protects Fredericks From Liability.**

The First Amendment limits the ability of the courts to impose tort liability for speech
between private citizens on an issue of public concern.  *See New York Times v. Sullivan* 376 U.S.
254 (1964).  Accuardi's three different causes of action are all premised on Fredericks' opinion
based on disclosed facts, and all three can be equally barred by the First Amendment. *Time Inc.
v. Hill* 385 U.S. 374 (1967) (false light); *Hustler Magazine, Inc v. Falwell*, 485 U.S. 46 (1988)
(IIED and invasion of privacy); *Snyder v. Phelps,* 131 S. Ct. 1207 (2011) (IIED); *NAACP v.
Clairborne Hardware,* 458 U.S. 886 (1982) (malicious interference with business).  Where
speech on matters of public concern is involved, the First Amendment precludes liability based
on statements that fail to contain a provably false factual connotation. *Milkovich v. Lorain
Journal Co.*, 497 U.S. 1 (1990).

Any factual, non-opinion, Blog statements are equally protected because they are true.
All three of Accuardi's claims depend on falsity.  Though Accuardi has failed to allege any
particular false statement found in the Blog, to the extent that he is successful in showing that

PAGE 12 - MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)

certain statements are not protected opinions, he will not be able to demonstrate falsity because they are true; all Blog assertions drew from reliable source documents and conversations with people who had firsthand knowledge about the Blog's subject matter.

### a.  The Blog is Fredericks' Opinion

The First Amendment absolutely protects opinion speech.  "[A] court must ask as a threshold matter "whether a reasonable fact finder could conclude that the contested statement 'impl[ies] an assertion of objective fact.' If the answer is no, the claim is foreclosed by the First Amendment." *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).  Statements of pure opinion, as well as those based on disclosed facts, are subject to the same First Amendment protections.  *Lewis v. Time, Inc*, 710 F.2d 549, 555 (9th Cir. 1984) ("A statement of opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning.").  *See also* Restatement (2d) of Torts § 566 cmt. c (1965) ("A simple expression of opinion based on disclosed ... nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is.").

Whether speech is an assertion of opinion or fact is determined by an examination of "the work as a whole, the specific context in which the statements were made, and the statements themselves to determine whether a reasonable fact finder could conclude that the statements imply a false assertion of objective fact and therefore fall outside of the protection of the First Amendment." *Partington* at 1153. Only false representations of fact are subject to the types of claims asserted by Accuardi.

Fredericks used evidence to support all of his opinions, including FCC complaint data[3], declarations of state investigators  and attorneys general[4], telephone conversations with

---

[3] Fredericks Dec. ¶ 5
[4] Fredericks Dec. ¶ 4

PAGE 13 - MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)

telemarketing intermediaries[5], contracts provided to Fredericks by telemarketing intermediaries[6], correspondence with Accuardi[7], and Fredericks' own analysis of computer metadata of telemarketing contracts[8]. The Blog makes clear the evidence on which Frederick's opinion is based, and offers readers the actual source documents, which they can then review and make a determination about the truth of Fredericks' conclusions.

The Blog presents Fredericks' First Amendment protected opinion. His language is couched as opinion and states throughout the blog that readers should review the information and make their own determination. *See infra* note 9. He continually reminds readers that his conclusions are based on the information provided in the Blog. *Id.* A review of the whole Blog reveals that it does not present bare assertions of objective fact, but of opinion based on disclosed and detailed public records from which readers are invited to draw their own conclusions.

When the facts underlying a statement of opinion are disclosed, readers will understand they are getting the author's interpretation. They will be unlikely to construe the statement as insinuating the existence of additional, undisclosed facts, and a statement made without foundation "reveals its lack of merit when the opinion-holder discloses the factual basis for the idea." *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985). Readers are free to accept or reject the author's opinion based on their own independent evaluation of the facts. *Id.*

The Ninth Circuit applied this principle where an attorney claimed he had been defamed by an article calling him a "shady practitioner." *Lewis v. Time, Inc.,* 710 F2d 549. The court held that the First Amendment protected this expression of opinion because the article set forth the facts on which the opinion was based: a judgment entered against the attorney for defrauding his clients, and another judgment holding him liable for malpractice. The article's factual assertions were accurate, and concluded that the plaintiff's claim was barred. *Id* at 554.

---

[5] Fredericks Dec. ¶15
[6] *Id.*
[7] Fredericks Dec. ¶12
[8] Fredericks Dec. ¶15

PAGE 14 - MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 200
Portland, Oregon 97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

("[W]here a publication sets forth the facts underlying its statement of opinion ... and those facts are true, the Constitution protects that opinion from liability for defamation").

Fredericks' opinions about Accuardi are analogous to those in *Lewis* and the Blog's language is couched in terms of opinion, not fact.[9] "Where the language of the statement is 'cautiously phrased in terms of apparency' … the statement is less likely to be understood as a statement of fact rather than as a statement of opinion." *Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980). A fair reading of the Blog can only conclude that it represents the author's opinion. Therefore, the First Amendment absolutely protects Fredericks from liability.

/ / / /

/ / / /

---

[9] "In **my personal opinion**, Pacific Telecom is clearly in violation of the Telemarketing Sales Rule. **What do you think?** Please take the time to report unsolicited telephone calls associated with Pacific Telecom's customers to the State agencies listed on this site." Blog July 17, 2012

"These facts are **a clear indication** that Pacific Telecom and its leaders Steve Hamilton, F. Antone Accuardi and Fred Accuardi are likely in violation of a number of laws, including 16 C.F.R. §310.3(b) of the Federal Telemarketing Sales Rule …." Blog October 8, 2012.

"The o**nly reasonable conclusion** is that Pacific Telecom is either actively involved in assisting these telemarketers or is willfully ignorant of the fact that their services are being used exclusively for illegal purposes." Blog September 11, 2012.

"Pacific Telecom **most likely** has full knowledge of this scheme." Blog August 30, 2012.

"**This appears to be** a clear violation of both the Federal Telemarketing Sales Rule and 47 USC § 227." Blog August 24, 2012.

"Well, it turns out that Fred Accuardi is affiliated with a company called International Telephone Corporation, which purports to be based in the country of Belize. **This conclusion is based** on the fact that someone published a comment on this blog under the name Fred Accuardi and listed f.a@inttelephone.com as his email address." Blog August 17, 2012.

"Please evaluate this information from a skeptical viewpoint and carefully draw your own conclusions." Blog August 17, 2012.

"It's clear that there are close connections between Pacific Telecom and TMC. They share at least one employee. They both have a presence in Oregon. (Here is a picture of TMC's Oregon Office.) **It's certainly possible** that TMC is one of the "3rd party contractors" who hire unscrupulous telemarketers to blast illegal calls through Pacific Telecom's network." Blog June 4, 2012.

"**It is plausible** that Telephone Management Corporation connects telemarketers with Pacific Telecom. However, if both companies share the same "General Legal Counsel," **it would seem odd** that Pacific Telecom has absolutely no knowledge about the telemarketers who use their phone network." Blog June 4, 2012

PAGE 15 - MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 200
Portland, Oregon  97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

### b.  Any False Implications Are Not Actionable.

Accuardi fails to present any actual statements from the Blog in support of his claim. Fredericks makes it clear that the Blog is his point of view.  Fredericks Dec ¶ 18, Ex 1. (The first paragraph of text describes the Blog as "commentary").  The expression of a point of view is fully protected by the First Amendment.  *See Phantom Touring, Inc. v. Affiliated Publications,* 953 F.2d 724, 729 (1st Cir. 1992) ("[Because] the sum effect of the format, tone and entire content of the articles is to make it unmistakably clear that [the author] was expressing a point of view only, ... the challenged language is immune from liability.").

Instead, Accuardi's complaint alleges that the Blog *implies* that he is engaged in a conspiracy to perpetuate illegal telemarketing and other evils.  *See* Complaint ¶7(A)–(H). He couches these claims as a "summary" of how he is portrayed on the Blog and does not cite to the actual language of the Blog itself.  His claim is based, not on the language of the Blog itself, but on the implication of the Blog's statements.

However, when the actual language used by Fredericks in the Blog is examined, Accuardi's complaint falls apart.  A fair reading of the blog does not support the implications which Accuardi draws because Fredericks' opinion is disclosed as being based on public records. The entire purpose of the Blog was to connect the dots among telemarketing intermediaries, regulated utilities and telemarketers themselves.  Fredericks' statements would not have been credible without reasonable evidence; he would have been just an internet conspiracy theorist.

When a claim is based on implication, falsity necessarily cannot be proven. *Lewis v. Time, Inc* 710 F2d 549.  Negative implications are "not the kind of factual expression for which the Constitution permits liability to be imposed." *Id.* at 554.  Since no actual language from the Blog is alleged to have been false, and Accuardi's only assertion is that the Blog implies a false implication, the First Amendment absolutely protects Fredericks.

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 200
Portland, Oregon  97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

## 2. The False Light Claim Fails.

Even if the First Amendment doesn't absolutely protect Fredericks from Accuardi's suit, Accuardi must still present substantial evidence on each element of his multiple claims. Accuardi claims that the Blog portrays him in a false light, and he must now demonstrate by a preponderance of the evidence that he can prove a prima facia case at trial. He cannot do so.

While the distinction between false light and defamation is difficult to draw, the Supreme Court has held that false light claims must meet the same constitutional standards as defamation claims. *Time Inc. v. Hill* 385 U.S. at 388. The evidence for both torts rests on the same underlying conduct, but false light provides a remedy for invasion of privacy, and defamation provides a remedy for damage to reputation. *Magenis v. Fisher Broad., Inc.*, 103 Or. App. 555, 558, (1990). The analysis, and case law, discussing both claims is interchangeable.

Oregon has adopted the false light theory of invasion of privacy found in the Restatement (Second) Torts. *Dean v. Guard Pub. Co., Inc.*, 73 Or. App. 656, 659–60 (1985). The Restatement says that a plaintiff must prove: (a) the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and (b) the defendant has knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. Restatement 2d § 652E:3. False light requires falsity, a highly offensive association, and actual knowledge or reckless disregard of the truth. *Id.* Accuardi cannot prove falsity and actual knowledge or reckless disregard for the truth.

Fredericks explicitly and openly cited source documents for his opinions. As discussed above, those documents were produced by state investigative agencies, attorneys general, public records and first-hand conversations with people involved in the sale of telemarketing services. "Recklessness" in Oregon is action without knowledge of truth or falsity; it is an action taken without a basis one way or the other. *See Holland v. Lentz,* 239 Or. 332, 340 (1964). An opinion

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 200
Portland, Oregon  97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

based on significant and uncontroverted evidence from public agencies and government records is not reckless.

Additionally, many of the Blog's posts are beyond the statute of limitations.  The statute of limitations on a defamation claim is one year. ORS 12.120(2).  False light claims are also subject to the 1-year limitation.  *Magenis* at 559.  This case was filed on October 14, 2013.  The Blog began on May 19, 2012 and 27 Blog posts were made between the initial post and the statute of limitations date.  All 27 of those posts are not actionable.

### 3. Intentional Infliction of Emotional Distress Also Fails

Accuardi's IIED claim stems from the same conduct as his other claims: Fredericks' Blog postings which reveal Accuardi's connections with unscrupulous telemarketers.  The Oregon anti-SLAPP statute applies equally to this claim as well as the False Light claim.  This court has previously dismissed claims for IIED pursuant to ORS § 31.150. *See Card v. Pipes,* 398 F. Supp. 2d at 1136–37.  *See also DuBoff v. Playboy Enterprises Int'l, Inc.*, CIV. 06 358 HA, 2007 WL 1876513 (D. Or. June 26, 2007).

A claim for IIED requires proof that (1) defendants' acts were so extreme and outrageous that they constituted an extraordinary transgression of the bounds of socially tolerable conduct; (2) defendants intended to inflict severe emotional distress on plaintiff; and (3) defendants' acts caused plaintiff severe emotional distress.  *Babick v. Or Arena Corp.*, 333 Or 401, 411 (2002).

Accuardi will not be able to present evidence to support a prima facie case for IIED. Fredericks did not intend or desire to inflict *any* emotional distress on Accuardi.  Fredericks Dec ¶ 3.  No evidence exists to refute Fredericks declaration.  Oregon courts have limited the term "intent" to include only those situations where the defendant desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result

PAGE 18 - MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 200
Portland, Oregon  97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

from his conduct. *McGanty v. Staudenraus*, 321 Or 532, 550 (1995) (quoting Restatement (2d) of Torts, § 46, cmt I (1965)).

Additionally, Accuardi cannot demonstrate a sufficient causal nexus between the Blog postings and his emotional distress. The Complaint alleges emotional distress caused by unidentified third parties who harass Accuardi through "harassing calls and death threats". Complaint ¶ 34. But IIED requires that the *defendant's* actions cause the plaintiff severe emotional distress. Accuardi's complaint does not assert that Fredericks' actions caused his emotional distress; he, therefore, cannot prevail on this claim.

Even if Accuardi did successfully claim that Fredericks' Blog posts were the actual cause of his severe emotional distress, his posts were well within the bounds of socially acceptable conduct. "A trial court plays a gatekeeper role in evaluating the viability of a claim for … IIED by assessing the allegedly tortious conduct to determine whether it goes beyond the farthest reaches of socially tolerable behavior and creates a jury question on liability." *House v. Hicks*, 218 Or. App. 348 (2008).

Fredericks' Blog posts do not go beyond the "farthest reaches of socially tolerable behavior". He posted his source documents. He cited to opinions and affidavits by state and federal regulatory agencies. He placed a cautionary notice advising readers not to harass those exposed by the Blog. His posts were reasonable, responsible and well within the bounds of socially tolerable conduct, and cannot form the basis of an IIED claim.

Additionally, Fredericks actively discouraged the public from harassing those exposed on the Blog. When CalledId4U, a telemarketing facilitator criticized on the Blog, contacted Fredericks and made him aware that they were receiving threatening and harassing communications, Fredericks posted the following in response:

> We encourage our readers to refrain from any direct or perceived threat of violence towards CallerId4U or anyone else. Instead, put your energy into complaining loudly and

PAGE 19 - MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)

frequently to the regulators listed on this web site, who are responsible for enforcing telemarketing laws.

We don't doubt that CallerId4U has received angry communications from individuals who have been harassed by seemingly endless amounts of robocalls from their phone numbers.  However, we believe that CallerId4U may have intentionally mischaracterized the information published on our site in an effort to silence our discussion of their business practices.

For instance, they falsely state that we have published sensitive information about their employees that somehow puts them in danger:

"Your relentless and irresponsible posting of personal and private information puts not only our employees at risk, but children and spouses as well and even unrelated third parties. Any harm, physical or mental, and/or loss of life will ultimately be on you and fear not that sooner or later we will know who you are. … Do yourself a favor and remove all personal information, phone numbers, names and addresses of residences or businesses from all your postings before something tragic happens."

   *CallerId4U, Inc., 02/06/2013*

Again, for the record, the information we publish is gathered from regulatory filings, court documents and other public sources.  The corporate mailing address, phone number and email address contained in CallerId4U's utility applications is most certainly not "private."

   Blog post February 7, 2013

Fredericks posted this to put his readers on notice that they should refrain from threatening conduct and should instead channel their anger toward those responsible for enforcing state and local telemarketing regulations.  Fredericks' actions represent the Platonic Form of responsibly exposing the wrongdoings of others, and he cannot be held liable for IIED, or any other theory of recovery.


/ / / /


/ / / /

PAGE 20 - MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)

### 4. Interference with Prospective Economic Advantage Is Not Actionable.

Accuardi further claims the Fredericks intentionally interfered with his prospective economic advantage by exercising Fredericks' First Amendment right of free speech. This tort is generally referred to as Intentional Interference with Economic Relations and requires that Accuardi prove (1) the existence of a prospective economic advantage; (2) intentional interference with the relationship; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and damage to the economic relationship; and (6) damages. *McGanty v. Staudenraus*, 321 Or at 535. Accuardi cannot prove the existence of a prospective economic advantage, intentional interference with the relationship**,** accomplished through improper means or for an improper purpose or a causal effect between the interference and damage to the economic relationship**.**

Accuardi cannot prove the existence of a prospective economic advantage. Accuardi claims that he has prospective rights in *potential and hypothetical* future legal work and relationships, and that those opportunities are now destroyed. Complaint ¶ 41. To prevail requires Accuardi to prove "a voluntary relationship with another party that would have very likely resulted in a pecuniary benefit for the plaintiff but for the defendant's interference." *Cron v. Zimmer*, 255 Or. App. 114 (2013). Accuardi cannot present evidence of any voluntary relationship that would have "very likely" resulted in pecuniary benefit. His complaint only cites to vague refusals of affiliation and "meaningful participation" in the legal market place. The complaint does not make more than a speculative association to any voluntary relationships, which cannot support Accuardi's allegations.

Accuardi also cannot prove the existence intentional interference with his speculative relationships. To prevail he must prove that Fredericks intended to interfere with Accuardi's business relations when Fredericks made the statements on the Blog. Fredericks intended to

PAGE 21 - MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 200
Portland, Oregon  97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

shed light on the telemarketing industry, not cause injury to Accuardi.  Fredericks Dec. ¶3.  He cannot prove intent, so he cannot prevail on his claim.

Further, Accuardi cannot prove improper purpose or improper means.  "If liability is based on an improper purpose, the purpose must be to inflict injury on the plaintiff as such".  *Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or 487, 498 (1999) (internal quotation omitted).  If liability is based on improper means, the means must violate some objective, identifiable standard, such as a statute or other regulation, or a recognized rule of common law, or perhaps, an established standard of a trade or profession.  *Id.*  Improper means must be independently wrongful by reason of statutory or common law, beyond the mere fact of the injury complained of.  *Thompson v. Tel. Data Sys., Inc.*, 130 Or App 302, 313 (1994).

Fredericks posted the Blog to expose telemarketers in an attempt to stop them from calling him, and did so pursuant to his constitutional rights to free speech.  *See* Fredericks Dec ¶ 3.  Speaking out on abuses of federal law on an issue affecting millions is not an improper purpose, and doing so on the internet is not improper means.

Finally, Accuardi must show that there is a causal connection between Fredericks' protected speech and Accuardi's damages, and that he has actually suffered damages.  Accuardi's prospective relations are speculative at best, and his ability to reasonable establish damages is equally speculative.  He cannot present evidence on this element, and his claim should be dismissed.

### C.    The Claims Against the Doe Defendants Should be Dismissed.

In addition to the claims against Fredericks personally, Accuardi asserts that several "Doe" defendants are liable for all claims because they posted "inaccurate information" on various internet sites and they wrongfully posted a government affidavit on the internet which Fredericks reposted on the Blog.

PAGE 22 - MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)

The mere posting of "inaccurate" information does not give rise to any of the claims asserted by Accuardi. Accuardi must allege a "short plain statement of the claim" showing that he is entitled to relief. FRCP 8(a)(2). An allegation of posting "inaccurate" information, without more, does not establish an entitlement to relief. To the extent that it does, the Doe defendants are entitled to the same First Amendment protection as Fredericks is, as argued above.

Additionally, Accuardi seeks to impose liability on unnamed persons for posting the Affidavit of Tanya Hetzler on the internet. Accuardi claims that Hetzler abused any privilege by posting the Affidavit on the internet, and those that facilitated that abuse, should be held liable for something. See Complaint ¶¶12–13.

Fredericks obtained the Hetzler Affidavit from the North Dakota Public Service Commission's website, where the entire case file against Pacific Telecom is available.[10] Fredericks Dec ¶ 9. No Doe defendants surreptitiously, or wrongfully, obtained the Affidavit and passed it onto Fredericks in a scheme to smear Accuardi. It is publicly available on the internet for anyone to find.

## V.    CONCLUSION

Accuardi's claims of false light, intentional infliction of emotional distress and interference with prospective economic relations are exactly the kind of claims that the anti-SLAPP statute was intended to discourage: they are "meritless first amended [claims] aimed at chilling expression through costly, time consuming litigation." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d at 1109 . Fredericks statements are true, and not actionable, or opinion, and not actionable. Accuardi cannot "establish that there is a probability that [he] will prevail on the claim[s] by presenting substantial evidence to support a prima facie case." ORS 31.150(3).

---

[10]  *See* North Dakota Public Service Commission Case #PU-12-750 available at http://www.psc.nd.gov/database/docket_view_list.php?s_dept=PU&s_year_case=12&s_seq_num=750&s_company _name=Pacific+Telecom+Communications+Group%2C+Inc. The Hetzler Affidavit is Docket #3.

PAGE 23 - MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 200
Portland, Oregon  97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

His claims should be stricken and Fredericks awarded his reasonable attorney's fees and costs under ORS 31.152(3).

DATED: November 18, 2013.

Motschenbacher & Blattner LLP

/s/ Troy G. Sexton
Troy G. Sexton OSB #115184
tsexton@portlaw.com
Phone: 503-417-0517
Of Attorneys for Defendant Brad Fredericks

PAGE 24 - MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 200
Portland, Oregon  97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)** on:

> **F. Antone Accuardi**
> 64783 E. Lupine Dr
> Rhododendron, OR 97049
> 503-564-9130
> Email: interlaw@justice.com

[   ] Via First Class Mail

[   ] Via Email

[   ] Via Hand Delivery

[X] Via ECF Notification

        DATED: November 20, 2013.


                                    /s/ Troy G. Sexton
                                    **Troy G. Sexton**, OSB #115184
                                    tsexton@portlaw.com
                                    Attorneys for Defendant Brad Fredericks.

H:\TSEXTON\FREBRA.2507\DEFAMATION DEFENSE.001\PLEADINGS\DEFENDANTS MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE FINAL(AMENDED).DOCX

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 200
Portland, OR  97204-3029
Telephone:  503-417-0500  •  Fax:  503-417-0501